UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KENNETH FORD, | : | |
| Petitioner, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:06-cv-2063 (JCH) |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| Respondent | : | MAY 23, 2007 |

**RULING RE: PETITIONER'S MOTION PURSUANT TO 28 U.S.C. § 2255 [Doc. No. 2]**

The petitioner, Kenneth Ford, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 in order to vacate, set aside, or correct his conviction and sentence. Ford essentially alleges that his guilty plea was invalid and that he received inadequate assistance of counsel at both the plea and sentencing stages. For the reasons that follow, Ford's petition is DENIED.

**I.　STANDARD OF REVIEW**

"Because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." Ciak v. U.S., 59 F.3d 296, 301 (2d Cir. 1995) (internal citation omitted). "As a general rule, relief is available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Napoli v. United States, 32 F.3d 31, 35 (2d Cir. 1994) (internal citations and quotation marks omitted).

1

## II. FACTS

After a federal grand jury returned a superceding indictment on June 15, 2004, the Government charged Ford with conspiring to possess with the intent to distribute more than 500 grams of cocaine and more than 50 grams of a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 846. Because Ford had previously been convicted of a prior drug offense, he was subject to a mandatory minimum sentence of twenty years imprisonment and a maximum sentence of life imprisonment. 21 U.S.C. § 841(b). On February 10, 2005, Ford waived indictment and entered a plea of guilty to conspiring to possess more than 500 grams of cocaine with the intent to distribute, in violation of 21 U.S.C. § 846. The offense to which Ford plead guilty carried a mandatory minimum sentence of ten years imprisonment and a maximum sentence of life imprisonment. Resp. Ex. B. Ford's change of plea hearing lasted approximately one hour and five minutes.

Following Ford's guilty plea, the probation office for the District Court of Connecticut prepared a presentence report ("PSR") on Ford. This PSR indicated that Ford was a career offender as defined by section 4B1.1 of the United States Sentencing Guidelines (the "Guidelines").[1] Ford PSR at p. 8. The PSR also found Ford's total offense level to be 34 and determined his criminal history category to be VI. As such, Ford's Guidelines range called for 262-327 months of imprisonment. See

---

[1] Under the Guidelines, "[a] defendant is a career if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1.

Sentencing Table, U.S.S.G. (2005 version).

On November 17, 2005 this court held a hearing on Ford's sentencing. During the hearing, the Government filed a substantial assistance motion under section 5K1.1 of the Guidelines for Ford's cooperation in the Government's investigation and prosecution other individuals believed to have committed offenses related to Ford's alleged crime. The court granted the Government's motion, which authorized the court to depart from Ford's Guidelines range in imposing sentence. U.S.S.G. § 5K1.1. The court then considered and discussed the factors outlined in section 3553(a) of Title 18 of the United States Code, following which the court sentenced Ford to a period of incarceration of 90 months. Sentencing Hearing Tr. at 21-26.

## III.     DISCUSSION

Ford's claims for relief fall into two general categories. The first category of claims are found in grounds one, five, and six of Ford's motion to vacate. In these grounds, Ford advances theories of ineffective assistance of counsel in Ford's plea negotiations, his sentencing, and his direct appeal, respectively. Ford's attorney for all three of these stages was Gary Mastronardi. The second category of claims are found in grounds two, three, and four of Ford's motion to vacate. In these grounds, Ford alleges that his conviction was wrongfully obtained by virtue of an unknowing guilty plea, a violation of the privilege against self-incrimination, and a coerced confession, respectively. The court addresses these two categories in turn.

### A.     Ineffective Assistance of Council

To prevail on his grounds for ineffective assistance of counsel, Ford must show

both that his counsel's representation "fell below an objective standard of reasonableness," and that his counsel's deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 688 (1984) (discussing objective standard of reasonableness prong); id. at 694 (discussing prejudice prong). An attorney's performance may be said to fall below an objective standard of reasonableness when a petitioner demonstrates that, "under the totality of the circumstances, [the attorney] failed to exercise the skills and diligence that reasonably competent attorney would provide under similar circumstances." Boria v. Keane, 99 F.3d 492, 496 (2d Cir. 1996). A showing of prejudice requires establishing to "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

### 1. Plea Negotiations

Ford first claims that he received ineffective assistance counsel during his plea negotiations. The crux of Ford's argument is that, after his attorney informed him that the government would offer him a 5K1.1 motion in exchange for his cooperation, his attorney then promised him that his resultant sentence would be less than five years. Motion to Vacate at p. 6 (Ground One).[2] Attorney Mastronardi denies promising that Ford would receive either a 5K1.1 motion or a sentence of less than five years. Mastronardi Aff. at ¶ 4 (Resp. Ex. E). Instead, Attorney Mastronardi contends that he told Ford that, "in light of the government's decision to make a § 5K1 sentencing

---

[2]In his Reply, Ford submits a different account of Attorney Mastronardi's representations. Ford now asserts that, "[Attorney Mastronardi] advised me that it was up to the judge's discretion what my sentence would be. But with his recommendation and full cooperation I should be recommended 5 years or less by the U.S. Attorney also." Reply at 3.

recommendation on [Ford's] behalf, it was not unreasonable for [Ford] to believe that his sentence might very well be less than the 10 year mandatory minimum." Id.

The court need not resolve this factual dispute because, even crediting Ford's version of these events, Ford cannot demonstrate prejudice. At the change of plea hearing, the court placed Ford under oath and canvassed him on his understanding of his cooperation agreement with the government. See Plea Hearing Tr. at 3-14. The court informed Ford that the Government retained discretion as to whether it would offer a 5K1.1 motion, and that the Government could decide not to offer the motion if it found that Ford had not been of substantial assistance. Id. at 9, 11. When the court asked if Ford understood this, Ford responded "Yes." Id. The court further informed Ford that, in order for Ford to reap the benefits of his cooperation, the court had to grant the Government's 5K1.1 motion, a decision solely within the court's authority. Id. at 9-10. Ford again answered "Yes" when asked if he understood. Id. While the court did advise Ford that, if the court granted a 5K1.1 motion, it could sentence Ford to a sentence less than the mandatory minimum, id. at 8-9, the court went on to have the following exchange with Ford:

> Court: Now I don't know whether you have any expectation as you stand here today about what [your sentence will be] is . . . but what would be wrong is if you were, in effect, deciding to plead guilty because you felt your expectation would come true . . . . In other words, I'm sure you discussed possible sentences with counsel. I'm sure he's given you the benefit of his experience as to what the sentence might be. The fact of the matter is that nobody can tell you what your sentence is going to be because I don't know what it is yet. I don't have enough information about you or the crime you have committed. Until I get that information, I won't make a decision. In federal court you have to decide to plead guilty without knowing your sentence. The only thing you can know is what the maximum is and in this case, what the mandatory minimums are. Do you understand that?

Ford:   Yes.

Id. at 36.

Shortly thereafter, Ford indicated that he was pleading guilty of his own free will, affirmed that his understanding of his plea agreement was no different than the explanation given by the court, and signed the plea agreement. Id. at 46, 48. When the court asked whether Ford had any questions to ask before he entered his plea, Ford stated that he did not. Id. at 47. Thus, granting the premise that Ford's interactions with Attorney Mastronardi left him with an inappropriate expectation with regards to his ultimate sentence, nothing about Ford's exchanges with the court during his change of plea would permit a reasonable inference that, but for Attorney Mastronardi's assumed misrepresentations, Ford would not have plead guilty. See also id. at 28-31 (Ford acknowledging his understanding that, by pleading guilty, he was giving up the right to a trial by jury and the protections afforded therein).

2. Sentencing

Ford next argues that Attorney Mastronardi rendered ineffective assistance of counsel at sentencing because Attorney Mastronardi failed to challenge Ford's career offender enhancement, file a sentencing memorandum, or otherwise present an effective defense argument. The court finds each of these claims to be without merit.

As to whether Mastronardi's performance was deficient for his failure to argue that Ford did not qualify as a career offender, Ford does not allege, let alone offer, any evidence that the career offender enhancement was inappropriate notwithstanding the probation officer's finding to the contrary. Thus, there is nothing to suggest that

Attorney Mastronardi's representation fell below an objective standard of reasonableness in this regard.

The court also finds that Ford has not carried his burden on showing that Attorney Mastronardi's failure to file a sentencing memorandum was objectively unreasonable. According to Attorney Mastronardi, he did not file a sentencing memorandum in order to protect the confidentiality of Ford's cooperation. Mastronardi Aff. at ¶ 6 (Resp. Ex. E). Attorney Mastronardi instead chose to present his sentencing arguments to the court, eliminating the need to file anything on the public docket. See id. Ford does not indicate any information or argument that Attorney Mastronardi neglected to present at Ford's sentencing that could have been included in a sentencing memo; nor does Ford allege any information or argument that Attorney Mastronardi presented ineffectively at Ford's sentencing that could have been addressed more persuasively via a sentencing memo. Attorney Mastronardi's decision appears to the court to be a sound strategic choice; thus, Ford's claim fails. See Strickland, 466 U.S. at 690.

Ford next contends that, because Attorney Mastronardi was absent from seven of Ford's eight proffer sessions with the Government concerning his cooperation, Attorney Mastronardi was unprepared make a convincing argument on the quality of Ford's cooperation. Specifically, Ford argues that Attorney Mastronardi should have informed the court of Ford's prior willingness to testify at trial against his co-defendants. The difficulty here is that, although Attorney Mastronardi did not mention Ford's willingness to testify at the sentencing hearing, the court noted on the record its prior awareness that Ford's name had been disclosed as a possible trial witness.

Sentencing Tr. at 9. Moreover, the court unambiguously expressed its positive valuation of Ford's willingness to testify. Id. As a result, even assuming that Attorney Mastronardi was unaware that the Government had tapped Ford as a potential trial witness, there is no evidence that Attorney Mastronardi's oversight prejudiced Ford.

Finally, Ford states that Attorney Mastronardi refused Ford's request to present the court with evidence that Ford had been beaten in jail as a result of his cooperation. Attorney Mastronardi apparently also failed to mention that, as a result of the attack, Ford was transferred to a psychiatric facility and placed on a forty-eight hour suicide watch. While the Guidelines explicitly permit the court to consider the injuries a defendant suffers as a result of his cooperation, U.S.S.G. § 5K1.1(a) (4), Ford's evidence does not support an inference that he was assaulted as a result of his cooperation.

Ford asserts that, because of his attack and subsequent injuries, this court "signed a medical motion on 7/28/04." Pet. Reply at 6. This signing would have been slightly over a month after Ford's arrest on June 23, 2004. Ford did not execute a proffer agreement with the Government until October 14, 2004, making it unlikely that he engaged in any cooperation before this date. In addition, Ford did not enter into a formal cooperation agreement with the Government until February 10, 2005. At Ford's sentencing, the Government reported that Ford had "provided cooperation during the course of the months ensuing since [February 10, 2005]." Sentencing Tr. at 4. Though the Government's representation certainly does not preclude the possibility that Ford cooperated before February 10, it also does nothing to support Ford's suggestion that he began cooperating sometime before July 28, 2004. Thus, beyond Ford's conclusory

8

statements that someone injured him because of his cooperation, there is no evidence in the record to support this allegation. Since Ford has not substantiated the factual predicate for his claim that he suffered injury as a result of his cooperation, the court rejects his Strickland claim on this ground.

        3.    Direct Appeal

On his final ground for ineffective assistance of counsel, Ford contends that Attorney Mastronardi refused to file a direct appeal, then refused to pursue the direct appeal that Ford filed on his own. In fact, Ford claims that he withdrew his direct appeal on Attorney Mastronardi's advice that such an appeal would be frivolous and that the better course would be for Attorney Mastronardi to focus on Ford's motion to correct or reduce his sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure. Once Ford withdrew his direct appeal, he claims that Attorney Mastronardi decided against filing a Rule 35 motion.

Since Ford was able to file his own timely notice of appeal, he cannot demonstrate that he was prejudiced by Attorney Mastronardi's refusal to file a direct appeal. The court further finds that Attorney Mastronardi advising Ford to withdraw his direct appeal and abandoning the Rule 35 motion do not fall below an objective standard of reasonableness. In a letter to Ford, Attorney Mastronardi explained that, "[t]here is no basis for an appeal in your case. You received a significant - in fact unusually significant - downward departure, and the sentence the judge imposed is legal and fully within the court's authority." Mastronardi Letter (attached to Ford motion to vacate). On this logic, Attorney Mastronardi asserted that there was no basis upon which Ford could reasonably alter his sentence. Id.; see also Mastronardi Aff. at ¶ 7.

9

Considering the totality of the circumstances surrounding Ford's sentencing, Attorney Mastronardi's decision to abandon any challenge to Ford's sentence, which was two and a half years less than the mandatory minimum applicable to the offense and fourteen years lower than the sentence called for by Ford's Guidelines range, was reasonable.[3]

The court finds that Ford has failed to establish any basis for an ineffective assistance of counsel claim. Ford's motion to vacate on this ground is therefore denied.

**B.    Ford's Guilty Plea**

Before directly addressing Ford's attempts to establish that his guilty pleas was invalid, the court notes that a defendant's original plea carries significant force, and "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison 431 U.S. 63, 74 (1977). The court finds that nothing in Ford's submissions overcomes this presumption.

Ford first claims that his plea was unknowing because he believed that his plea would not result in a sentence of more than five years. As discussed above, the court thoroughly canvassed Ford with respect to the court's duty to impose a sentence, irrespective of any expectations Ford may have formed prior to his decision to plead guilty. Ruling, supra, at 5-6. Based on Ford's affirmations of understanding, the court found his plea to be knowing and voluntary. Plea Hearing Tr. at 49-50. The court therefore finds that there is no basis to Ford's claim that his plea was unknowing.

---

[3]Ford does not allege that Attorney Mastronardi's actions prevented him from pursuing either the direct appeal or the Rule 35 motion with new counsel or on his own.

Next, Ford argues that the Government improperly used Ford's statements during a proffer session to establish that Ford had been in possession of 1, 000 grams of cocaine; thus, Ford's guilty plea resulted from a violation of his privilege against self-incrimination. This claim is also baseless. The Government represented at the plea hearing that it would establish the amount of cocaine attributable to Ford through wiretap evidence and testimony from Ford's alleged co-conspirators. Id. at 40-44. At no point did the Government indicate that any of its evidence derived from a proffer session with Ford. Further, Ford has come forward with nothing beyond his own conclusory allegations to show that any of the Government's proof with respect to quantity was based on a confidential proffer session. See Blackledge, 431 U.S. at 74 ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal.").

Ford's final claim is that his plea was obtained by the use of a coerced confession. Ford's confession was allegedly coerced at a proffer session at which his counsel was not present. Due to his counsel's absence, Ford felt "confused and intimidated." Motion to Vacate at 7 (Ground 4).

Ford provides no specific facts concerning what occurred at the proffer session to allow an inference that his subsequent confession voluntary. See Blackburn v. State of Alabama, 361 U.S. 199, 206 (1960) (holding that judgment of whether a confession was coerced is based on "totality of circumstances"). Morever, Ford stated under oath that no one coerced him into entering into a cooperation agreement. Plea Hearing Tr. at 14. Ford also affirmed that no one forced, threatened, or coerced him in any way into pleading guilty. Id. 46. When Ford signed his plea agreement, which Ford

11

acknowledged to the court he had previously seen and gone over with his attorney, Id. at 47, he indicated that he was doing so voluntarily and of his own free will, Id. at 48. Relying on such representations, the court found that Ford's plea was voluntary and knowing. Id. Absent any evidence to the contrary, the court concludes that Attorney Mastronardi's alleged absence from Ford's proffer session did not affect the voluntariness of Ford's guilty plea.

The court finds that Ford has not established that his guilty plea was in any way invalid. As such, his motion to vacate on these grounds is denied.

## IV. CONCLUSION

For the foregoing reasons, Ford's Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 1) is DENIED. The clerk is directed to close the case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 23rd day of May, 2007.

    /s/ Janet C. Hall
Janet C. Hall
United States District Judge